## SHAW v. THE STATE OF OHIO.

*Constitutional law — State medical board — Sections 1274-1 to 1274-7, General Code — Practitioners in limited branches of medicine and surgery — Examination and registration.*

Sections 1274-1 to 1274-7, General Code, relating to the practice of medicine in the limited branches, are not rendered unconstitutional as being an improper and unreasonable discrimination, or as being an unreasonable exercise of the police power, merely because Section 1288, General Code, provides that the laws relating to the practice of medicine and surgery shall not relate to an osteopath who passes an examination in anatomy, physiology, obstetrics and diagnosis.

(Decided April 30, 1919.)

ERROR: Court of Appeals for Summit county.

*Messrs. Holloway & Chamberlain,* for plaintiff in error.

*Mr. C. G. Roetzel,* prosecuting attorney, and *Mr. W. A. Spencer,* assistant prosecuting attorney, for defendant in error.

DUNLAP, P. J. The plaintiff in error, Fred Shaw, was tried and convicted in the probate court of Summit county, on an affidavit and information charging him with unlawfully practicing medicine and surgery in the state of Ohio without having first obtained a certificate from the state medical board so to do. The judgment of the probate court was affirmed by the common pleas court on error proceedings instituted in that court, and the case brought here on error to review the judgment of the common pleas and probate courts.

The errors complained of in the brief and upon argument relate to the sufficiency of the information, the claim being that it is defective in form and substance, that the trial court erred in overruling a motion to quash it, and also in overruling a demurrer to the same. The further claim is made that there was error in the refusal of the court to give certain requested charges before argument to the jury.

Some claim is made in argument that the affidavit did not charge the crime with sufficient definiteness to apprise the accused of the nature of the offense. With regard to this claim we are of the opinion that in this respect the affidavit is sufficient, and this claim must be disallowed.

The main contention is that the sections of the General Code relating to the control of the practice of medicine and surgery and the limited branches thereof, Sections 1274-1 et seq., General Code, under which this conviction was had, are unconstitutional, or at least that no proper conviction can be had under them in the present case. We shall not burden this opinion with a quotation of those statutes.

The bill of exceptions taken upon the trial, and filed in this case, does not contain the evidence adduced upon the trial. It is simply a statement to the effect that the state to maintain its action gave in evidence certain testimony tending to prove the matters therein set forth, that the defendant gave in evidence certain testimony tending to prove the issues raised by his plea of not guilty, and that at the conclusion of the evidence and before argument the defendant requested the court to give

certain instructions in writing to the jury, not as
a series, but as separate propositions of law. It
then sets forth the instructions so requested. We
therefore have no means of knowing whether the
proof tended to show that plaintiff in error was
engaged in the practice of one or more of the lim-
ited branches of medicine, whether it tended to
show that he was engaged in the general practice,
or as an osteopath. So far as the bill of excep-
tions discloses, we only know that evidence was
offered tending to prove the matters set forth in
the information. Consequently we are forced to
disregard the statement of the brief for plaintiff in
error to the effect that he is an electropath, and
therefore practicing one of the limited branches
above referred to.

The argument of counsel for plaintiff in error
upon the question of unconstitutionality seems to
be directed from the point of view of one prac-
ticing one of these limited branches, and the claim
is made that the requirements by way of examina-
tion for their practice are an unreasonable exercise
of the police power of the state.

There seems to exist in the minds of counsel for
both parties a slight misapprehension of the mean-
ing and construction of the medical laws of Ohio.
Thus, one of the principal arguments of plaintiff in
error, and, indeed, the principal argument, is to
the effect that because Section 1288, General Code,
provides among other things that the laws relating
to the practice of medicine and surgery shall not
relate to an osteopath who passes an examination
in anatomy, physiology, obstetrics and diagnosis,
the law relating to the practice of limited branches

is unconstitutional, because of the fact that an examination on many other subjects is required for those desiring to practice what are known as the limited branches, and, osteopathy being also a limited branch, an improper and unreasonable discrimination exists, rendering the law unconstitutional.

This argument is not sound and is not based upon a true premise. Osteopathy is not regarded by the statute as one of the limited branches of medicine and surgery, but is regarded as purely and simply osteopathy, whatever that may be; nor is it true that the examination provided for applicants for a license to practice osteopathy, in Section 1288, General Code, above referred to, is the only examination required for that purpose. The examination required upon the subjects of anatomy, physiology, obstetrics and diagnosis, provided for in said section, is an examination given by the state medical board, but that examination is not given until after compliance with the provisions of the next section, Section 1289, which provides for a number of very high requirements upon the part of one desiring to practice osteopathy, including evidence of proper preliminary education and a certificate from an osteopathic examining committee to the effect that the applicant has passed a satisfactory examination in pathology, physiological chemistry, gynecology, minor surgery, osteopathic diagnosis, and the principles and practice of osteopathy. Provision is then made in the next section for the appointment of a state osteopathic examining committee, its organization, etc.

It is quite evident, therefore, that at the time of the passage of the original law, which was in 1902, what was known as the practice of osteopathy had gained considerable foothold in the state. Efforts had been made to prevent its practice, and some of its practitioners had been arrested as unlawfully practicing medicine and surgery under the then existing medical laws. The first of these cases to reach the supreme court was the case of *State of Ohio* v. *Liffring*, 61 Ohio St., 39. It was then held that the practice of osteopathy did not come within the terms of the existing laws. The law was then amended by the legislature, but the amendment thus made was held void by the supreme court in the case of *State of Ohio* v. *Gravett*, 65 Ohio St., 289, for the reason that four years of study were required for the practice of osteopathy, while a less time was required for study of those contemplating the regular practice of medicine and surgery. This was deemed by the supreme court as a discrimination and as sufficient reason for holding the amendment unconstitutional.

To meet this situation, the law of 1902 above referred to was enacted. An examination of the legislative records of that session of the legislature will reveal the fact that at that session of the legislature the osteopaths of Ohio caused to be introduced into the house of representatives a bill entirely divorcing the respective practices of osteopathy and medicine, and providing for the recognition of osteopathic methods of healing and the establishment of a state board of osteopathic examiners entirely separate and distinct from the state medical board. The osteopaths were desirous

of obtaining legal recognition to prevent unauthorized and uneducated quacks from assuming to practice osteopathy and also to prevent interference by the medical authorities of the state with what they considered the legitimate practice of their profession.

There was much objection to this proposed law, some of it no doubt being prompted by the more or less selfish desires of the medical practitioners, but the solid and enduring argument against the passage of this and all similar laws is and must be that encouragement should not be given to a separation or division of the healing art into schools, to the setting up of one against the other, and to the creation of rivalry among them; that every encouragement ought to be given to an exactly opposite tendency, to-wit, the gathering together under the general head of medicine of all the knowledge of the world concerning the healing art; and that when some discovery of importance is made in this field it should not instantly justify the birth of a new school of healing or therapy, at once seeking to divorce itself from its proper sphere, but should gain its recognition through the constituted medical and scientific channels.

It is not to be wondered at that the legislature did not sanction this proposal. Had it taken this step, such might very well be regarded as a precedent for the establishment of all kinds of boards, and we would to-day, in view of the partial recognition that has been given to so-called limited branches, probably have the state medical board, the state osteopathic board, the state chiropractic board, the state electro-therapeutic board, the

state mechano-therapeutic board, the state sugges-
tive-therapeutic board, the state Christian Science
board, the state board of massage, and perhaps
also the state board of chiropody. It is question-
able when the process would ever end. As it was,
in 1902, when what we may call the osteopathic
law was passed, these limited branches did not
exist, or at any rate were in such embryonic state
as to have negligible influence. There was osteop-
athy, however, not claiming to be a limited
branch, but claiming all the dignity of a complete
school of healing, and after a short period of exist-
ence, embracing, perhaps, a decade, demanding all
the recognition and legal sanction which had only
just been accorded to medicine after the lapse of
thousands of years since the beginning of the
world. No, the legislature was not, and in the
nature of things could not be, qualified to grant
this demand. It did see fit, however, to go part
way. It recognized the existence of the cult and
its probable right to exist, and to grow and pros-
per. It said to the osteopaths: "We don't under-
stand your therapy any more than we understand
the method of cure by drugs, but we do have cer-
tain ideas about what any person and every person
who attempts to practice the healing art should at
least know and be reasonably informed about. We
hold it to be fundamental that your school teaches
the same anatomy, the same principles of physi-
ology and obstetrics that are taught by medicine,
and that you recognize the differences between dif-
ferent diseases and recognize the importance of
diagnosis. Upon these subjects there can be no
glaring difference between medicine and osteop-

athy. We are not greatly concerned about your method of cure, but we are greatly concerned that you should know what you are about to attempt to cure. We are more concerned that you should properly diagnose the case which you are called to treat than we are about your therapy or method of cure." And so it passed the law of 1902, found in 95 Ohio Laws, page 212, being now Sections 1286 to 1293, inclusive, General Code.

These sections provide in general terms for two examinations for applicants, one by a board of osteopathic examiners, upon all things which they regard as essential for the practice of osteopathy, and one by the state medical board, on subjects which to the lay minds of the legislature appeared common and fundamental to all the branches of the healing art. Some slight and immaterial amendments have since been made by the legislature, but the law in the main still stands as the medical law of the state.

To it has since been added, as the cults or schools began to grow in influence, certain provisions for the practice of the so-called limited branches of medicine or surgery, Section 1274-1 providing for the limited branches of chiropractic, naprapathy, spondylotherapy, mechano-therapy, neuropathy, psycho-therapy, magnetic healing, chiropody, Swedish movements and massage, and then (comprehensively, so as to be done with it, perhaps), "such other branches of medicine or surgery * * * that may now or hereafter exist, except midwifery and osteopathy." The reason for these last exceptions undoubtedly was that laws already existed providing for their practice. All of these limited

branches were placed by the law under the control and guidance of the state medical board, consistently with the theory conceived by the legislature in 1902 and permeating the law where provision was made for osteopathy alone.  Provision is then made in Section 1274-2 for an examination of applicants for practice in these limited branches, which seems to be perfectly reasonable so far as such applicants are concerned, and against which such applicants have no just ground for complaint.

It will thus be seen that counsel is in error in claiming that applicants for permission to practice any of the limited branches provided for in Section 1274-1 are being discriminated against in favor of those 'who practice osteopathy, even if osteopathy be regarded as a limited branch, for the list of subjects prescribed for examination does not appear as formidable as the list assigned for the examination of osteopaths.

The argument, therefore, fails.

It was perhaps quite unnecessary to go into the history of this legislation in order to pass upon the constitutionality of the statutes in question, as that no longer seems an open question since the rendering of the following decisions: *Triplett* v. *State of Ohio,* 23 C. C., N. S., 172; *State* v. *Hughes,* 83 Ohio St., 445, reported without opinion, and *State* v. *Marble,* 72 Ohio St., 25.  Nevertheless, we have seen fit to give the above reasons in answer to the argument made in this case, because they embrace a view of the situation not presented by the authorities.

As to the other ground of error, namely, that the court refused to give certain instructions in

writing to the jury before argument, it is sufficient to say that the statute providing for special instructions before argument applies only to civil cases.

We find no error in this record prejudicial to the rights of the plaintiff in error, and the judgment will be affirmed.

*Judgment affirmed.*

WASHBURN and VICKERY, JJ., concur.